IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 MAR -8 PM 12:50

U.S. DISTRICT COURT
N.D. OF ALABAMA

BENITA LIGON,

    Plaintiff,

vs.                                        CASE NO. CV-99-J-3153-S

H.C. PARTNERSHIP d/b/a
HILL CREST BEHAVIORAL
HEALTH SERVICES,

    Defendant.

ENTERED

MAR 8 2001

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 13) and evidentiary submissions in support of its motion (doc. 14). The plaintiff submitted a brief in opposition in an untimely manner, and no motion to allow said opposition to be filed out of time was received by the court. The plaintiff also untimely submitted a motion is opposition to the defendant's motion (doc. 15) and evidence in opposition thereto (doc. 16). The defendant filed a reply brief. The court has reviewed the motion, the memoranda of law and the evidentiary submissions.

### I. PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against her, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, by suspending and demoting her. Complaint at ¶ 6. Neither party having requested oral argument, this court considered this motion upon the pleadings, briefs, and evidentiary submissions. Having considered all of the foregoing, the court concludes that the motion for summary judgment is due to be granted in favor of

17

the defendant and against the plaintiff. This court has jurisdiction of this case pursuant to 42 U.S.C. § 12101 *et seq.* and 28 U.S.C.§ 1331.

## II. FACTUAL BACKGROUND

In the light most favorable to the plaintiff, the facts of this case are as follows: The plaintiff began working for the defendant as a full-time staff nurse in April 1989, and returned to full-time status in May, 1997. Plaintiff depo. at 14, 33, 34. She was promoted to House Supervisor in April, 1998. *Id.* at 35-36. The plaintiff began suffering from health problems in May, 1998, and was off work sick a number of days in June, 1998. *Id.* at 39, 44. She was never denied any time off for sick days. *Id.* at 39, 40. The plaintiff states she informed her supervisor that she "really, really needed some time off, but what do you want me to do? Do you want me to be off, or do you want me to just keep coming to work?" and was told to keep coming to work. *Id.* at 42. She further states she was told in late June, 1998 to drink a lot of coffee. *Id.* at 137, 138. She never formally requested leave. *Id.* at 42, 44.

The plaintiff has Scleroderma in her legs below the knees. Plaintiff depo. at 51, 57. It affects her skin by causing it to be hard and discolored, and causes joint and bone problems. *Id.* at 57, 58. She notified her employer of this by letter from her doctor on August 31, 1998, when she was first given this diagnosis. *Id.* at 51, 54. She has never been given any work restrictions because of this condition and her symptoms have not changed since she was first diagnosed with this. *Id.* at 54, 58.

Before she was diagnosed with Scleroderma, the plaintiff had symptoms which included loss of energy, severe swelling of her lower extremities and the skin in her lower

legs was very hard. Plaintiff depo. at 61, 62. She never requested that her job duties be modified in any way. *Id.* at 63, 64.

In late June or early July, 1998, the plaintiff was informed by oral warning that staff members were making complaints that she was not available to assist them. Plaintiff depo. at 64, 65. The complaints also alleged that she appeared sleepy, was not making her rounds or answering pages, spoke in a slurred fashion and appeared to stagger at times. *Id.* at 65. The plaintiff testified that she did respond to all pages and requests for assistance and that she never spoke in a slurred fashion or staggered during this time period. *Id.* at 66, 68-69. She stated she had trouble walking, but never actually staggered, and never fell asleep on the job. *Id.* at 67, 69. She was on a medication called Neurontin, of which she informed her supervisor. *Id.* at 67-68. The plaintiff had a conversation with her supervisor to explain that the medication made her drowsy, but not to the point she fell asleep. *Id.* at 69-71.

The plaintiff disputes that she failed to respond to a Code Blue page on July 2, 1998. Plaintiff depo. at 72. She states she arrived within two or three minutes of the page and the two attendants already present were "finishing up." *Id.* at 73-75. Several days after this incident, the plaintiff spoke with Beverly White, Director of Nursing, regarding the plaintiff's job performance. *Id.* at 82. White told the plaintiff that there were problems with her not answering the code, not answering pages, and other employees feeling like the plaintiff was not doing her job. *Id.* at 83. The plaintiff disputes each of these contentions. *Id.* at 83-84. In fact, the plaintiff testified she was fully capable of performing all of the essential functions of House Supervisor. *Id.* at 84. She also stated that she told Rhonda

Elder (the Nurse Manager) her medication made her drowsy but "that I, you know, I could make it. But if there is a problem, you know to tell me." *Id.* at 41, 85. At the time she met with White, she had not yet been diagnosed with Scleroderma. *Id.* at 90-91.

In mid-July or early August of 1998, the plaintiff was taken off work for a week pending the results of a drug test because of her being sleepy and drowsy. Plaintiff depo. at 127-128, 141, 145. The plaintiff obtained a note from her doctor stating she was stable and that her medication was not causing her problems. *Id.* at 97. The plaintiff later testified that at the time she took the drug screen, she had already been taken off the medication in question, but she was still sleepy. *Id.* at 140.

The plaintiff alleges that when she was diagnosed with Scleroderma, she took White a note from her doctor and told her that "from time to time I may need some accommodations." Plaintiff depo. at 92-93.

On August 21, 1998, the plaintiff received an oral reprimand due to tardiness and excessive absences. Plaintiff depo. at 114-115. She alleges this stems from the time during which she was sick. *Id.* at 115-116. She states that her lack of availability to the staff, problems with prioritizing and the poor response to the Code Blue were all discussed with her as a part of this reprimand. *Id.* at 116. The plaintiff did not agree with any of the reasons in the reprimand and stated that she was not having any problems with her job performance. *Id.* at 117, 118, 120. She further stated that she was performing all of the functions of her job in a satisfactory manner. *Id.* at 118. The plaintiff received a two day suspension as a result of the reprimand. *Id.* at 126-127.

The plaintiff was demoted in October, 1998. Plaintiff depo. at 110. She testified that before her demotion, she earned $18.51 per hour plus a three dollar an hour shift differential, for a total of $21.50 per hour. *Id.* at 130. Upon demotion, the plaintiff was given the choice of positions in the Adult Unit at $17.00 per hour plus shift differential, or Admissions at $16.00 per hour with a 75 cent shift differential. *Id.* at 130-131. The plaintiff chose the Admissions position even though it paid less because it presented her with a new challenge. *Id.* at 131; exhibit 2G to defendant's evidentiary submissions. She added that she knew she would not be on her feet as much in that department. Plaintiff depo. at 132.

The plaintiff quit her job with defendant on August 15, 2000. She now works for the University of Alabama at Birmingham hospital system at Spain Rehabilitation Center, earning more than she did with the defendant. Plaintiff depo. at 16-18. She has had no problems working her three 12 hour shifts per week and has not asked that any of her job requirements be altered or modified. *Id.* at 19.

### III. STANDARD FOR EVALUATING A SUMMARY JUDGMENT MOTION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

> trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## IV. DISCUSSION

The ADA provides that no covered employer shall discriminate against a "qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, the plaintiff must show that (1) she has a disability; (2) she is a qualified individual "which is to say, able to perform the essential functions of the employment position that [s]he holds ... with or without reasonable accommodations; and (3) she was discriminated against because of the disability. 42 U.S.C. § 12132; *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000); *citing Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999); *see also* 42 U.S.C. § 12132; *Swain v. Hillsborough County School Board*, 146 F.3d 855, 857 (11th Cir.1998). In addition, the plaintiff must show that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir.1996).

The defendant argues that plaintiff is unable to establish that she is "disabled" as that term is defined by the ADA. Without meeting such definition, the plaintiff is necessarily precluded from establishing that she was wrongfully demoted or suspended due to a disability in violation of the ADA.

The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; or (B) a record of such an impairment or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff apparently argues that she falls within the first category of disability as she states that "she has established that her disease impairs a major life activity, that of walking, due to the swelling and pain in her legs. Ms. Ligon testifies in her deposition as well as her interrogatories of the pain and swelling in her legs, which naturally would cause one to have trouble walking." Plaintiff's motion in opposition at 1.

The United States Supreme Court has fashioned a three part analysis for consideration of a claim under subsection (A), above: (1) whether the plaintiff had a physical impairment; (2) identification of the life activity upon which plaintiff relies and determining whether it constitutes a major life activity under the ADA; and (3) whether the impairment substantially limits the major life activity. *Bragon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). Thus, to establish a prima facie case and survive summary judgment, the plaintiff must present sufficient evidence to create a genuine issue of material fact as to whether her physical impairments substantially limit her ability to partake in a major life activity. *Id.; see also Swain*, 146 F.3d at 857.

The EEOC defines major life activity as, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1996). "Substantially limited" is defined by the EEOC for ADA purposes to mean:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(1996). In deciding whether a major life activity has been substantially limited, the EEOC provides several factors to consider:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2)(1996); *Gordon*, 100 F.3d at 911.

In the instant action, the plaintiff claims that she has limitations on the major life activity of walking.[1] However, plaintiff's own testimony does not support such an argument. In her deposition, she repeatedly states, under oath, that she was able to perform all functions of her job, which included promptly responding to pages and making rounds. Plaintiff depo.

---

[1] This identification of a limitation on a major life activity is made by the plaintiff for the first time in her untimely response to summary judgment as a conclusory allegation. In her responses to interrogatories, when specifically asked to describe each and every major life activity inhibited by Scleroderma, the plaintiff responds that "I suffer from fatigue, low energy level and neuropathy of my lower extremities." Interrogatory 12 and response thereto, submitted as exhibits 3 and 4 to defendant's evidentiary submissions.

at 63, 69. The plaintiff did state that she had trouble walking. *Id.* at 67. She testified that her legs swell and she has severe pain in her knees. *Id.* at 58. Further, the plaintiff never requested the defendant to modify or adjust her job duties.[2] *Id.* at 63-64. *See* defendant's ADA policy which was provided to plaintiff and stating it is the responsibility of the disabled individual to make a written request for reasonable accommodations, submitted as exhibit 2A to defendant's evidentiary submissions. *See also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir.1999).

The plaintiff submitted no medical records to support her claim of limitations in walking. The only evidence submitted aside from plaintiff's testimony, outlined above, are notes from plaintiff's doctors, one of which states "Miss Ligon is stable on her medication and should be able to return to work totally." Exhibit 2B to defendant's evidentiary submissions. Another such note states that her condition "causes joint pain and may cause her to miss work" but does not state she has any limitations in walking. Exhibit 2D to defendant's evidentiary submissions. The plaintiff has not submitted any evidence to show that she is more restricted in her ability to walk that the average person in the population, or that she has any restrictions at all from this condition. *See Maynard v. Pneumatic Products Corp.*, 233 F.3d 1344, 1347-48 (11th Cir.2000); *Swain*, 146 F.3d at 857 ("The term 'substantially limited' means significantly restricted in the ability to perform either a class

---

[2]The plaintiff argues that the defendant was given written notice the plaintiff had a disability. Plaintiff's memorandum at ¶ 5. However, the deposition testimony on which the plaintiff relies for this proposition actually states that the plaintiff notified the defendant she had Scleroderma. Plaintiff's depo. at 51. The existence of a medical condition is not the same as a disability as that term is defined by the ADA. *See e.g. Hillburn*, 181 F.3d at 1227; *Gordon*, 100 F.3d at 911. The court does not doubt that the plaintiff suffers from Scleroderma, however, the court does find that the condition failed to cause a disability under the ADA.

of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities").

In response to the reprimand plaintiff received on August 21, 1999, she never stated that any of the complaints about her are due to limitations in her ability to walk. *See* Exhibit 2E to defendant's evidentiary submissions. Similarly, when the plaintiff was reprimanded and suspended for two days in October, 1998, she again did not respond that the problems with her work performance were due to limitations in her ability to walk. Rather, the plaintiff disputed both times that there was any shortfall in her work performance at all.[3] *See* Exhibit 2F to defendant's evidentiary submissions. In fact, the plaintiff testified that she is doing her current job, as a nurse, without any limitations or accommodations. Plaintiff's depo. at 19. Because the plaintiff has failed to produce any evidence at all that she is limited by an impairment, the court is unable to find any "major life activity" to be limited.

Because of the plaintiff's failure to establish that either (1) she has a physical or mental impairment that substantially limits a major life activity or (2) the record of such impairment or (3) being regarded as having such an impairment, the plaintiff has failed to establish that she was discriminated against because of a disability. *See e.g. Hillburn*, 181 F.3d at 1226-27 (to constitute a disability, the plaintiff must show a physical impairment

---

[3]The court finds that the complaints against plaintiff resulting in her suspension and demotion in October, 1998 have absolutely nothing to do with the ability to walk. Rather, the reasons listed include that the staff is still complaining that the plaintiff is unavailable to help them, her unavailability in responding to unsafe patient conditions, a family of a patient complaining that the plaintiff stated she was going for a smoke break before doing the patient assessment, approval of payroll time for hours not worked by an employee, not remaining confidential with employee information, trying to intimidate the staff, and excessive tardiness. Exhibit 2F to defendant's evidentiary submission.

which substantially limits one or more major life activity); *see also Swain,* 146 F.3d at 857. The plaintiff's proof, at most, is that she suffers from a physical impairment which, standing alone, is not necessarily a disability as contemplated by the ADA. *Chandra v. Englehard/ICC,* 234 F.3d 1219, 1222 (11th Cir.2000). Similarly, not every disability entitles an individual to the protections of the ADA. *Hillburn,* 181 F.3d at 1227; *Gordon,* 100 F.3d at 911.

The plaintiff states that she could do her job with or without accommodation, and cited no evidence to support any contention that she was regarded by the defendant as having a disability. In the facts before this court, no evidence exists that the defendant regarded the plaintiff as having a significant impairment. Because the plaintiff has not alleged that her ability to walk is limited to an extent greater than the average person in the population and further has failed to show she is limited in any way from performing her job, or any other job, she cannot be considered disabled for purposes of protection under the ADA.

## V. CONCLUSION

In consideration of the foregoing, the court finding no evidence that the plaintiff was suffering from a disability at the time of his termination, the court can find no genuine issue of material fact left for trial. As such, defendant's motion for summary judgment be and hereby is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the ___8___ day of March, 2001.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE